# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE JERMAINE SHERRORS,<br><br>                              Petitioner,<br><br>vs.<br><br>A.K. SCRIBNER, Warden,[1]<br><br>                              Respondent. | CASE NO. 05-CV-1262 – IEG (LSP)<br><br>**ORDER:**<br><br>**1) REJECTING RESPONDENT'S OBJECTIONS;**<br><br>**2) ADOPTING REPORT AND RECOMMENDATION;**<br><br>**3) CONDITIONALLY GRANTING PETITION FOR WRIT OF HABEAS CORPUS; and**<br><br>**4) DENYING MOTION TO CLARIFY AS MOOT**<br><br>**[Doc. Nos. 46, 47, 51, 54]** |

    On June 20, 2005, petitioner Ronnie Jermaine Sherrors ("petitioner"), a state prisoner proceeding pro se, file a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his June 2001 conviction for first degree murder. (Doc. No. 1.) This matter was referred to United States Magistrate Judge Leo Papas pursuant to 28 U.S.C. § 636(b)(1)(B). On May 24, 2007, Magistrate Judge Papas issued a Report and Recommendation ("Report")

---

[1] When petitioner initially filed this habeas petitioner, Jeanne S. Woodford was named as the respondent in her capacity as warden of the institution where petitioner was incarcerated. However, petitioner's place of confinement has changed and, thus, A.K. Scriber has been substituted in place of Jeanne S. Woodford. See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 894 (9th Cir. 1996).

recommending that the court conditionally grant the petition for writ of habeas corpus. Respondent filed objections to the Report on June 19, 2007. (Doc. No. 47.) Petitioner filed a response to respondent's objections on July 30, 2007. (Doc. No. 54.)

Following *de novo* review of petitioner's claims, the court finds Magistrate Judge Papas's Report to be thorough, complete, and an accurate analysis of the legal issues presented in the petition. For the reasons explained below, the Court: (1) adopts in full Magistrate Judge Papas's Report; (2) rejects the respondent's objections; (3) conditionally grants petitioner's section 2254 petition; and (4) denies petitioner's motion for clarification as moot.

## BACKGROUND

**State Proceedings**

The Court incorporates by reference Magistrate Judge Papas's fair and accurate recitation of the factual and procedural background regarding petitioner's proceedings in state court.[2] (Report at 2-5.) To summarize, the victim, Steve Foth ("Foth"), moved to San Diego in September of 1999 in an attempt to recover from a cocaine habit. (Id. at 2.) On September 29, 1999, one of Foth's friends lent Foth an automobile, a cell phone, and a Visa credit card. (Id.) Foth and his friends planned to meet for dinner that evening but Foth never showed up. On September 30, 1999, Foth's body was discovered near a work site in San Diego with over 80 stab wounds. (Id. at 3.) On October 9, 1999, after coaxing from friends, Lena Hixon ("Hixon") falsely told police that she had murdered Foth with Benjamin Wilson and Terrence Smallgreen. A few days later, Hixon retracted her earlier statement and confessed that petitioner and an accomplice, James Hall ("Hall"), murdered Foth.

At trial, Hixon testified about the following events that led to Foth's murder. Foth approached Hixon late in the afternoon of September 29, 1999, looking to buy drugs. Hixon connected Foth with Hall and petitioner, who drove away with Foth in his borrowed car. (Id. at 4.) About 15 to 20 minutes later, Hall and petitioner drove back to pick up Hixon in Foth's car, but Foth was nowhere to be seen. Petitioner, Hall, and Hixon drove to a dirt lot near Lake Hodges.

---

[2] The Report took the summary of the facts from the factual background section of the California Court of Appeal's written opinion.

1  Petitioner and Hall opened the trunk of Foth's car and Foth emerged.  At this point, Hixon became
2  scared and protested but petitioner threatened her.  Petitioner then turned towards Foth and stabbed
3  him with a knife for several minutes.  After forcing Hixon to stab Foth, petitioner and Hall
4  stripped Foth and threw him into the bushes.  The threesome drove back to San Diego in Foth's
5  car and petitioner told Hixon to keep her mouth shut or he would harm her daughter.  At trial,
6  petitioner's sister, Trina Walker, testified she saw blood on petitioner's clothes when petitioner
7  returned home on the evening of September 29, 1999.  Petitioner and Hall were also seen with
8  Foth's car in the days following Foth's murder.[3]  The police arrested Hall and petitioner on
9  October 14, 1999.  (Id. at 5.)

10  On June 21, 2000, the San Diego County District Attorney filed an Amended Information
11  charging petitioner with one count of murder.  The Amended Information also alleged the use of a
12  deadly weapon (California Penal Code §12022(b)(1)) and commission of the murder during a
13  robbery (California Penal Code §190.2(a)(17)).  Following a jury trial, petitioner was found guilty
14  of murder in the first degree on June 7, 2001.  (Lodgment No. 15 at 299-300.)  The jury also found
15  the two additional allegations (i.e., use of a deadly weapon and murder during the commission of a
16  robbery) true.  (Id. at 329-330.)  On September 28, 2001, the trial court sentenced petitioner to life
17  in prison without the possibility of parole, plus one year.  (Id.)

18  Petitioner appealed to the California Court of Appeal, which affirmed his conviction on
19  July 16, 2003.  (Lodgment No. 4.)  On August 15, 2003, petitioner filed a petition for review in the
20  California Supreme Court, which denied his petition on October 1, 2003.  (Lodgment Nos. 5, 6.)

21  On October 25, 2004, petitioner filed a petition for habeas corpus in San Diego Superior
22  Court raising fifteen claims. The court denied his petition on December 9, 2007.  (Lodgment Nos.
23  9-10.)  Petitioner then filed a petition for habeas corpus with the California Court of Appeal.  The
24  Court of Appeal denied his petition on February 24, 2005.  (Lodgment Nos. 11, 22.)  On March 8,
25  2005, petitioner filed a petition for habeas corpus with the California Supreme Court.  (Lodgment
26  No. 13.)  The California Supreme Court denied  the petition on March 15, 2006.  (Lodgment No.
27
28  [3] Pursuant to a plea agreement, Hixon pled guilty to conspiracy to sell cocaine and assault with a deadly weapon.  (Report at 5.)  Hixon was sentenced to 12 years in prison.

1  14.)

2  **Federal Proceedings**

3      On June 20, 2005, petitioner filed the instant habeas petition alleging fourteen different
4  grounds for relief. (Doc. No. 1.) Respondent filed a motion to dismiss on September 12, 2005.
5  (Doc. No. 8.) The court denied respondent's motion to dismiss on March 23, 2006. (Doc. No.
6  23.) Respondent filed answer to the petition on June 30, 2006, (Doc. No. 29), and petitioner filed
7  a traverse on October 25, 2006. (Doc. No. 42.)

8      On May 24, 2007, Magistrate Judge Papas issued an eighty-eight page Report
9  recommending the Court deny the petition as to thirteen claims but recommending the Court
10 conditionally grant the petition as to Ground Nine. (Doc. No. 45.) Respondent filed objections to
11 the Report on June 18, 2007. (Doc. No. 46.) Petitioner filed a response to respondent's objections
12 on July 30, 2007. (Doc. No. 54.) Petitioner did not file objections to the Report.

13                         **DISCUSSION**

14 **A.**    **Legal Standards**

15     The magistrate judge set forth the appropriate standard of review with regard to the
16 petition. (Report at 6-8.) Where, as here, the California Supreme Court summarily denied
17 petitioner's request for review, the Court analyzes the California Court of Appeal's opinion as the
18 "last reasoned decision" on the merits of petitioner's case. Ylst v. Nunnemaker, 501 U.S. 797,
19 803-04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); Medina v. Hornung, 386 F.3d 872, 877 (9th
20 Cir.2004). A petition under § 2254 can be granted only if the Court determines that the California
21 courts decided petitioner's case in a manner that was either "contrary to, or involved an
22 unreasonable application of, clearly established Federal law, as determined by the Supreme Court
23 of the United States," or "based on an unreasonable determination of the facts in light of the
24 evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529
25 U.S. 362, 403, 412-13 (2000).

26     The Court will review *de novo* those portion of the Report to which respondent has
27 objected, to wit Grounds 7-9. 28 U.S.C. § 636(b)(1)(C); Holder v. Holder, 392 F.3d 1009, 1022
28 (9th Cir. 2004). As to the remaining grounds for relief, to which no party objected, the Court finds

the Report to be well reasoned and adopts it in full without further discussion.

**B.     Grounds Seven and Eight**

Although Magistrate Judge Papas recommends that the Court deny relief based upon on Grounds 7 and 8 of the petition, respondent argues Magistrate Judge Papas erred in his findings regarding each of those claims.  With regard to Ground 7, respondent argues Magistrate Judge Papas erred in finding CALJIC 8.81.17, as given, improperly told the jury it could convict petitioner of murder if it found "a defendant" was engaged in the commission of the robbery, rather than "the defendant."  With regard to Ground 8, respondent argues Magistrate Judge Papas erred in finding the language of the verdict form "troubling" because it omitted an essential element of the special circumstances allegation.

With regard to Ground 7, the Court finds Magistrate Judge Papas accurately analyzed the instruction and found it to be erroneous as given.  The state court itself was troubled by the fact counsel failed to notice the error in the instruction and the potential for prejudicial error. [Resp't Lodgment No. 4, at 12-14.]  The instruction telling the jury they could find a petitioner guilty if they found "a defendant" was engaged in the commission of robbery, rather than "the defendant" (i.e. petitioner), incorrectly stated the legal standard.  Magistrate Judge Papas correctly concluded the instruction, as given, was erroneous.

With regard to Ground 8, respondent correctly points out that under state law the fact the murder was "committed in order to carry out or advance the commission of the robbery" is not an "element" of the special circumstance allegation.  People v. Valdez, 32 Cal. 4th 73, 113-14 (2004). However, Magistrate Judge Papas understood the significance of the missing portion of the verdict form and, like the state court, used the term "element" in a non-technical sense.  Although the jury instructions told jurors they had to find "the murder was committed in order to carry out or advance the commission of the crime," the verdict form did not require the jurors to make any such finding.  The California Court of Appeal, itself, stated "it certainly is preferable that the *elements* of a special circumstance allegation be completely stated in the special verdict form." Upon review, Magistrate Judge Papas correctly concluded the verdict form erroneously failed to include the "in order to carry out or advance the commission of the robbery" language.

**C.     Ground Nine**

Respondent also objects to Magistrate Judge Papas's finding that the use of CALJIC 2.15 was prejudicial constitutional error requiring relief under § 2254. Relying on California Jury Instruction Criminal ("CALJIC") 2.15, the trial court instructed the jury as follows:

> If you find that a defendant was in possession of recently stolen property, the fact of that possession is not by itself sufficient to prove an inference that the defendant is guilty of the crime of murder. Before guilt may be inferred, there must be corroborating evidence tending to prove a defendant's guilt. However, this corroborating evidence need only be slight and need not by itself be sufficient to warrant an inference of guilt.
> As corroboration, you may consider the attributes of possession, time, place and manner; that the defendant had an opportunity to commit the crime charged; the defendant's conduct; his false or contradictory statement, if any; and other statements that may have been made with reference to the property. (Lodgment No. 15 at 233; Lodgment No. 17 at 1932-33.)

On direct appeal, the California Court of Appeal held the trial court erred in instructing the jury with CALJIC 2.15, which is inapplicable to a murder charge under a California Supreme Court case decided after petitioner's trial, People v. Prieto, 30 Cal.4th 226 (2003). (Lodgment No. 4 at 11.) Nevertheless, the court found the error was not prejudicial because CALJIC 2.15 is a permissive instruction that informs jurors they may infer guilt of murder from petitioner's possession of stolen property if there is any other corroborating evidence. (Id. at 11-12.) The California Court of Appeal reasoned the other jury instructions on the elements of murder, felony murder, and murder during the commission of a robbery demonstrated that the jury accepted Hixon's damning testimony. (Id. at 12.) Thus, there was no reasonable likelihood the jury would have rendered a more favorable verdict if the court had not given the instruction. (Id.)

1.     Magistrate Judge's Findings

In Ground 9 of the habeas petition, petitioner argues his due process rights were violated because the trial court misinstructed the jury that "it could infer [petitioner's] guilt of murder [sic] from his alleged possession of the victim's car plus 'slight corroborative evidence,'" which "lightened" the state's burden of proof. (Petition at 9.) Petitioner also claims his attorney's failure to object to this instruction resulted in a deprivation of his constitutional right to effective assistance of counsel. (Id.)

The Report correctly identified the legal standard and analytic steps applied in a federal habeas petition for determining whether a jury instruction is constitutionally defective. To obtain

1  federal collateral relief for errors in the jury charge, a petitioner must show that the ailing
2  instruction by itself so infected the entire trial that the resulting conviction violates due process.
3  Estelle v. McGuire, 502 U.S. 62, 72, (1991).  Additionally, the instruction may not be judged in
4  artificial isolation, but must be considered in the context of the trial record and the overall charge
5  to the jury as a component of the entire trial process.  Id.; United States v. Frady, 456 U.S. 152,
6  169 (1982).  Even if the court determines the instruction violated the petitioner's right to due
7  process, a petitioner can only obtain relief if the unconstitutional instruction resulted in actual
8  prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993).  Actual prejudice exists if
9  the unconstitutional instruction had a substantial and injurious effect or influence in determining
10 the jury's verdict.  Id.

11      First, Magistrate Judge Papas found CALJIC 2.15 created a permissive inference, rather
12 than a mandatory presumption.  (Report at 80.)  A jury instruction creates a permissive inference
13 where the jury is allowed, but not required, to infer a specified conclusion if the government
14 proves certain predicate facts.  Schwedeman v. Wallenstein, 971 F.2d 313, 315 (9th Cir. 1992).
15 While generally disfavored, Hanna v. Riveland, 87 F.3d 1034, 1037 (9th Cir. 1996), a permissive
16 inference is constitutionally sound if "the inferred fact is more likely than not to flow from the
17 proved fact on which it is made to depend."  Schwedeman, 971 F.2d at 315; see County Court of
18 Ulster County v. Allen, 442 U.S. 140, 162-67 (1979).  Applying this standard and relying on
19 Prieto, the Report found that CALJIC 2.15 was not constitutionally sound because the inferred fact
20 (i.e. petitioner committed the murder) is not "more likely than not" to flow from the proved fact
21 (i.e. petitioner possessed Foth's vehicle).  (Report at 80.)  Thus, Magistrate Judge Papas found
22 petitioner's due process rights were violated.

23      Magistrate Judge Papas noted the California Court of Appeal similarly reached the
24 conclusion the utilization of CALJIC 2.15 in this context was erroneous.  However, the Report
25 concluded the California Court of Appeal applied the incorrect standard of review in determining
26 the harmfulness of the error.  The California Court of Appeal applied the "trial error" harmlessness
27 standard and asked whether "it is reasonably probable that a result more favorable to the appealing
28 party would have been reached in the absence of the error" under People v. Watson, 46 Cal. 2d

1  818 (1956). (Id. at 81) However, because the error was constitutional, the state court should have
2  asked whether "the error was harmless beyond a reasonable doubt" under Chapman v. California,
3  386 U.S. 18 (1967). (Id.) (citing Bains v. Cambra, 204 F.3d 964, 971 (9th Cir. 2000)).

4  Magistrate Judge Papas recognized that despite the state appellate court's failure to apply
5  the correct standard, this Court is obligated to apply the harmless error standard articulated in
6  Brecht on federal habeas review. In other words, having found the existence of constitutional
7  error, the Court must determine whether the error had a "substantial and injurious effect or
8  influence" on the jury's verdict. (Report at 81-82.) Magistrate Judge Papas concluded there was
9  actual prejudice because the testimonial evidence tying petitioner to the murder was weak while
10 the evidence tying petitioner to Foth's vehicle was strong. (Id. at 81-84.) The instruction
11 improperly allowed the jury to convict petitioner of murder solely because the jury determined
12 petitioner possessed the stolen car.[4] Accordingly, Magistrate Judge Papas expressed grave doubt
13 as to the outcome of the trial and recommended the court grant the petition on Ground Nine.

14 2.   Analysis

15 As an initial matter, the Court must elaborate upon the application of AEDPA's standard of
16 review to the constitutional error in this case. Under AEDPA, a federal court "must defer to the
17 state court's harmless error ruling unless it is 'contrary to, or involve[s] an unreasonable
18 application of' Supreme Court precedent." Inthavong v. Lamarque, 420 F.3d 1055, 1061 (9th Cir.
19 2005) (citing 28 U.S.C. § 2254). As Magistrate Judge Papas found, the state court's harmless
20 error determination in this case was "contrary to" clearly established Federal law because the state
21 court failed to apply the Chapman harmless error standard. Mitchell v. Esparza, 540 U.S. 12, 15-
22 16 (2003).

23 Because the state court's harmless error was contrary to Supreme Court precedent, "no
24 deference is owed" and this court's review "revert[s] to the independent harmless error analysis
25 that we would apply had there been no state court holding." Inthavong, 420 F.3d at 1059. The
26 Supreme Court defined that harmless error standard in Brecht: "errors are harmless if they do not

---

[4] The Report did not address petitioner's argument that he was denied effective assistance of counsel because it recommended the petition be granted because CALJIC 2.15 created constitutional error. (Report at 86-87.)

- 8 -                                                                                          05cv1262

1 have a 'substantial and injurious effect or influence in determining the jury's verdict'." Id.
2 (quoting Brecht, 507 U.S. at 637).

3     In his objections, respondent argues the Report incorrectly concluded CALJIC 2.15
4 violated petitioner's due process right. Specifically, respondent argues the felony-murder doctrine
5 provides a legitimate basis for the instruction, in the context of the entire set of instructions.
6 Petitioner's liability depended on the fact that petitioner stabbed Foth during the commission of a
7 robbery. Thus, respondent argues, petitioner's possession of Foth's vehicle supported the
8 conclusion that petitioner committed robbery as well as the inference that petitioner committed
9 murder during the robbery. The Court finds respondent's argument that CALJIC 2.15 was not
10 erroneous, and was instead merely an ambiguous instruction, to be unpersuasive.

11     As Magistrate Judge Papas correctly noted, permissive inferences are constitutional "so
12 long as it can be said with substantial assurance that the inferred fact is more likely than not to
13 flow from the proved fact on which it is made to depend." Schwendeman, 971 F.2d at 316
14 (quotation and citation omitted). In Prieto, 30 Cal. 4th at 248-49, the California Supreme Court
15 specifically noted that CALJIC 2.15 should not be used in non-theft offenses, such as murder and
16 rape. The court in Prieto held that while the inference that a defendant committed theft "naturally
17 and logically" flow from the possession of stolen material and corroborating evidence, the
18 inference that a defendant committed murder does not "logically and naturally flow" from the
19 possession of stolen material. Id. at 249; see also Barker v. California, 91 Cal. App. 4th 1166,
20 1176 (2001). As such, the use of CALJIC 2.15 in the context of a murder prosecution is
21 erroneous. Prieto, 30 Cal. 4th at 248-49.

22     The rationale applied by the court in Prieto mirrors the standard used by the Ninth Circuit
23 in Schwendeman to analyze permissive jury instructions. The court agrees with the court in Prieto
24 and Schwendenman, as well as Magistrate Judge Papas's conclusion that murder is not a fact
25 "more likely than not to flow" from the possession of stolen material. Francis v. Franklin, 471
26 U.S. 307, 316 (1985) (stating a jury instruction is unconstitutional where "the suggested
27 conclusion is not one that reason and common sense justify in light of the proven facts before the
28 jury"). The Court rejects respondent's argument that CALJIC 2.15 as given in this case was

1 simply ambiguous and should be analyzed accordingly under the test articulated in <u>Boyde v.
2 California</u>, 494 U.S. 370, 380 (1990) (stating that for ambiguous instructions courts should ask
3 whether there is a "reasonable likelihood the jury has applied the challenged instruction in a way
4 that prevents the consideration of constitutionally relevant evidence").[5]

5       Because of the nature of the inference created by CALJIC 2.15, that instruction may only
6 be used in felony-murder prosecutions where it is specifically limited in application to establishing
7 the inference of the theft alone. It would have been appropriate for the trial court to instruct the
8 jury, pursuant to CALJIC 2.15, that they could infer petitioner committed a felony theft crime
9 because he was in possession of the stolen property. <u>See, e.g.</u>, <u>Ahmed v. Yates</u>, 2006 WL 516661,
10 at *15-16 (N.D. Cal. Feb. 28, 2006). After the prosecution demonstrated, based upon the
11 inference, that petitioner committed the felony theft crime, the prosecution could have then
12 proceeded to establish petitioner committed murder in connection with that felony. <u>See, e.g.</u>,
13 <u>People v. Harden</u>, 110 Cal. App. 4th 848, 858-59 (2003). However, CALJIC 2.15, as the trial
14 court used it in this case, did not limit the jury's inference to the underlying felony alone. Instead,
15 the court specifically instructed the jury that if they found petitioner was in possession of recently
16 stolen property they could make the unwarranted deductive leap that petitioner was guilty of
17 murder.[6]

18       Reviewing the evidence, the Court finds the conclusion suggested by the challenged
19 instruction (i.e., defendant committed murder) "is not one that reason and common sense justify in

---

[5] Petitioner's citation to a number of cases for the proposition that the felony-murder doctrine justifies use of CALJIC 2.15 in the instant case is unpersuasive. In <u>Barnes v. United States</u>, 412 U.S. 837, 844 (1973), the Court upheld a jury instruction that permitted the inference that the defendant was guilty of robbery if the jury found the defendant possessed stolen goods. That is not the type of instruction at issue in the instant case, but the type of instruction generally found acceptable because the inference naturally flows from the proven fact. In a 1896 case, <u>Wilson v. United States</u>, 162 U.S. 613 (1896), the Court simply concluded that the challenged instruction was permissive inference and not a mandatory presumption, but did not discuss due process implications, which is the relevant inquiry in the instant case. The court in <u>Baxter v. Thomas</u>, 45 F.3d 1501, 1509 (11th Cir. 1995) held the instruction did not create an irrational inference without any exposition or analysis.

[6] Moreover, the fact the jury found true the special allegation that the murder occurred during the commission of a robbery does not demonstrate the jury utilized the felony-murder doctrine in reaching their conclusion. The trial court instructed the jury to make the special allegation determination once it had already determined defendant was guilty of first degree murder. (Lodgment No. 17 at 1950.) By that point, the jury already relied on the improper jury instruction to determine petitioner's guilt of the underlying murder offense.

1 light of the proven facts before the jury." Francis v. Franklin, 471 U.S. 307, 316 (1985); Hanna,
2 87 F.3d at 1038 (finding that while substantial evidence supported petitioner's conviction,
3 conflicting evidence at trial showed that inference of recklessness was not justified by the facts);
4 United States v. Warren, 25 F.3d 890, 898 (9th Cir. 1994).  Here, there was no concrete physical
5 evidence connecting petitioner to the murder itself, including the absence of petitioner's DNA or
6 other identifying items at the crime scene.  The prosecution's star witness, Hixon, offered
7 conflicting recollections of the events of September 29, 1999 throughout the course of the
8 investigation and trial.  (See Lodgment 4 at 2-10; Lodgment 17 at 1020-1623.)  Hixon's testimony
9 also conflicted with other objective evidence in the record, including cell phone call records and
10 the discovery of Foth's property in Hixon's possessions.  (Lodgment 17 at 1036, 1567, 1671.)  In
11 sum, the record demonstrates the proven facts do not reasonably support the inferential leap that
12 CALJIC 2.15 permitted the jury to make.

13 Even taken in context of the remaining jury instructions, CALJIC 2.15 was not appropriate
14 as given in this case.  While other instructions told the jury to consider all the evidence and
15 clarified the government's burden of proof, none of these instructions constrained the jury from
16 relying upon petitioner's possession of Foth's vehicle to reach the ultimate conclusion that
17 petitioner murdered Foth.  Hanna, 87 F.3d at 1038 ("However, '[a] passing reference to consider
18 all evidence will not cure [a] defect' where a jury is entitled to convict by 'focusing on a few
19 isolated facts.'") (quoting Warren, 25 F.3d at 899).  To the contrary, the instruction allowed the
20 jury to focus solely on evidence, direct and corroborating, relating to petitioner's possession of the
21 car, and then convict petitioner of murder based on that evidence.

22 Lastly, respondent claims the strength of the physical evidence tying petitioner to the
23 murder renders any alleged error harmless.  Respondent, however, fails to specify what physical
24 evidence in the record dissipates doubt that CALJIC 2.15 had a substantial and injurious effect on
25 the jury's verdict.  As noted above and discussed in the Report, there was no direct physical
26 evidence linking petitioner to Foth's murder.  The government relied heavily on Hixon's
27 testimony, which was contradicted by her own previous statements and undermined by the
28 objective evidence.  The government also relied on the uncorroborated testimony of petitioner's

1  sister, whose credibility was seriously impeached by her own family.  (Lodgment No. 17 at 1581,
2  1714.)  In contrast, the evidence tying petitioner to Foth's vehicle was overwhelming.
3        The trial court's use of CALJIC 2.15 allowed the jury to infer petitioner murdered Foth,
4  based upon the strong evidence tying petitioner to Foth's vehicle, and despite the extremely weak
5  evidence directly tying petitioner to Foth's stabbing.  Based thereon, the Court finds the trial
6  court's use of CALJIC 2.15 had a substantial and injurious effect on the jury's verdict, such that
7  petitioner is entitled to relief under § 2254.

### *Conclusion*

9        For the reasons set forth herein, the Court hereby: (1) adopts in full Magistrate Judge
10 Papas's Report; (2) rejects the respondent's objections; (3) conditionally grants petitioner's
11 petition under 28 U.S.C. § 2254; and (4) denies petitioner's motion for clarification as moot.
12 Judgment shall be entered conditionally granting the writ unless the State decides to retry
13 petitioner within a reasonable time.
14       **IT IS SO ORDERED**.

16 **DATED:  November 2, 2007**

17                                       *[signature]*
                              **IRMA E. GONZALEZ, Chief Judge**
18                               **United States District Court**